UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAVID BRUNET                                    CIVIL ACTION

VERSUS                                          NO: 08-4187

INTERNATIONAL MARINE, L.L.C.                    SECTION: R(3)


**ORDER AND REASONS**

Before the Court is plaintiff David Brunet's partial motion for summary judgment. (R. Doc. 30). For the following reasons, the Court GRANTS in part and DENIES in part Brunet's motion.

I.  **BACKGROUND**

A.  **Factual Background**

On May 2, 2008, plaintiff David Brunet fell down a flight of stairs aboard the M/V INTERNATIONAL SCOUT. Brunet injured his neck and upper back in the fall. At the time, defendant International Marine employed Brunet as a deckhand aboard the ship. This suit concerns the ultimate responsibility for Brunet's injuries.

After his fall, Brunet was airlifted from the M/V INTERNATIONAL SCOUT. The first doctor to evaluate Brunet's injuries was Dr. Roger Blanchard. Blanchard diagnosed Brunet as having received a head trauma and cervico-thoracic strain.

1

Blanchard prescribed pain medication, a soft C-collar, and a week off of work.

On May 3, 2008, Brunet visited the Terrebonne General Medical Center emergency room.  There, emergency room physicians conducted several diagnostic tests on Brunet's neck and back, including a physical exam, x-rays, and CT scan of the spine and head.  The treating physician diagnosed Brunet with a slight concussion and possible pinched nerve, ordered an MRI of Brunet's neck and shoulder, and gave Brunet pain medication and a shot.

On May 6, 2008, Brunet returned to Blanchard for a follow-up appointment.  Brunet complained of the same symptoms he had before and Blanchard again conducted a physical exam.  After ordering an MRI, Blanchard referred Brunet to an orthopedic specialist.

On May 8, 2008, Brunet visited Dr. William Kinnard at Houma Orthopedic Clinic.  Kinnard reviewed Brunet's test results and suggested that Brunet was exaggerating his symptoms.  Consequently, Kinnard allegedly refused to treat Brunet and asked that he seek care elsewhere.

On May 10, 2008, Brunet, still complaining of muscle spasms and pain, admitted himself to the emergency room.  A CT scan performed on Brunet's spine returned normal, and the treating doctor referred Brunet to Dr. Michael Patterson at Southern Bone & Joint Specialists, P.A.

Patterson treated Brunet from May 2008 to August 2008. During that time, Patterson conducted an MRI and prescribed physical therapy to help Brunet rehabilitate his shoulder, back, and neck. Brunet also received two epidural steroid injections in his back.

In August 2008, Brunet visited Dr. Bradley Bartholomew. Following Patterson's initial diagnosis, Bartholomew recommended additional physical therapy. The therapy seemingly increased Brunet's range of motion. Even so, Brunet still complained of pain. Bartholomew ordered a discography of Brunet's cervical vertebrae, which he performed on March 10, 2009. Bartholomew then recommended that Brunet undergo Botox injections to alleviate his shoulder spasms. Brunet received the Botox injections, but is still, according to Bartholomew, a candidate for surgery.

**B.   Procedural Background**

On August 14, 2008, Brunet sued International Marine. Brunet claims that his fall resulted from International Marine's negligence and that as a result of his injuries, he is no longer fit and capable of returning to work. Specifically, Brunet claims that International Marine failed to institute proper safety precautions and did not maintain a seaworthy vessel. In part, Brunet seeks payment of past, present, and future "maintenance and cure" benefits. "Maintenance" includes the *per*

3

*diem* living allowance provided to seaman and "cure" is the payment of therapeutic, medical and hospital expenses. *See Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir. 1979).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

### B. Maintenance and Cure

The maritime employer's duty of maintenance and cure dates at least to the medieval sea codes. See *The Osceola*, 189 U.S. 158, 169-71 (1903); *Harden v. Gordon*, 11 F.Cas. 480, 482-83 (C.C.D.Me. 1823)(No. 6047). The duty obligates the maritime employer to pay for the lost wages, medical care, food, lodging,

4

and other incidental expenses of a mariner who falls ill or is injured while in the service of a vessel. *See Aguilar v. Standard Oil Co. of N.J.*, 318 U.S. 724, 730 (1943); *The Osceola*, 189 U.S. at 175. The duty is practically absolute. Unlike an employer's duties under the Jones Act, for example, liability for maintenance and cure is "in no sense ... predicated on the fault or negligence of the shipowner." *Aguilar*, 318 U.S. at 730. Because the duty is so broad, maintenance and cure has at times been compared to mandatory employer-provided health and accident insurance. *See Lindquist v. Dilkes*, 127 F.2d 21, 23-24 (3d Cir. 1942); Gilmore & Black, The Law of Admiralty 281-82 (2d ed. 1975).

In keeping with the absolute nature of the right, a plaintiff's burden of proof on a maintenance and cure claim is slight: he need only establish that he was injured or became ill while "subject to the call of duty as a seaman." *Aguilar*, 318 U.S. at 732; *see also* 1 Schoenbaum, Admiralty and Maritime Law § 6-28; Fifth Circuit Pattern Jury Instructions: Civil § 4.11 (2006 ed.). It is not necessary for the plaintiff to show that his injury or ailment originated during the term of his employment. The employer is liable even for pre-existing conditions that manifest themselves during the voyage. *See Jauch v. Nautical Services, Inc.*, 470 F.3d 207, 212 (5th Cir. 2006)(per curiam); *McCorpen*, 396 F.2d at 548; *see also Calmar S.S. Corp. v. Taylor*,

303 U.S. 525, 529 (1938); *Stevens v. McGinnis, Inc.*, 82 F.3d 1353, 1357-58 (6th Cir. 1996). Generally, the maritime employer's obligation to provide maintenance and cure ends when a doctor provides a qualified medical opinion that plaintiff has reached maximum medical improvement. *See, e.g., Breese*, 823 F.2d at 104. Finally, "ambiguities or doubts in the application of the law of maintenance and cure are resolved in favor of the seaman." *Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372, 374 n. 2 (5th Cir. 1981).

**III. DISCUSSION**

Brunet argues that no issue of material fact exists as to International Marine's liability for past due cure payments. (R. Doc. 30). Brunet's argument proceeds in three parts. First, Brunet argues that he has not yet reached a point of "maximum cure." *Id.; see Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)(defining "maximum cure" as the point in time when it appears "probable that further treatment will result in no betterment in the claimant's condition."). Second, Brunet argues that continuing his course of medical treatment is necessary. (R. Doc. 30). And third, Brunet contends that he has repeatedly given International Marine receipts for his medical expenses, and yet International Marine has not paid them. *Id.* In support, Brunet attaches itemized invoices and spreadsheets

6

illustrating his medical expenses. *Id.*

International Marine does not dispute that it owes Brunet cure benefits. (R. Doc. 32). Instead, International Marine argues that: (1) it has already paid Brunet for many of his medical bills; (2) it intends to pay Brunet for others but has not yet done so because they are currently being audited; and (3) Brunet has not provided sufficient information for International Marine to pay him for certain medical expenses. *Id.*

The Court finds that no genuine issues of material fact exist with regard to both the medical bills International Marine claims are under audit and the medical bills for which International Marine claims additional information is needed. International Marine does not explain what an audit is, and why, in some instances, it might take more than one-year to complete. (R. Doc. 32). For example, International Marine is still auditing a $250 bill for medical service rendered in January 2009 and four charges from 2008, no one of which exceeded $230. *Id.* To say that an "audit" of these small charges is in progress for more than 12 months without an explanation as to why does not create an issue of fact. The Court thus GRANTS Brunet's motion for the $6,142.50 in medical expenses currently under audit.[1] In

---

[1] This figure is the sum of the $5,372.50 in expenses International Marine claims are still currently auditing and the $770 in expenses International Marine categorizes as already paid, though International Marine's motion itemizes each as "(under audit)." (R. Doc. 32).

addition, International Marine argues that Brunet has not submitted copies of checks showing that he paid for certain medical services. (R. Doc. 32). This argument is also without merit. International Marine's obligation to cure is not predicated on Brunet's first paying his medical expenses. *See Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 90 (5th Cir. 1984)(citing cases). The medical bills alone are sufficient indicators that Brunet incurred medical costs for treatment of his injuries. *Id.* Brunet's burden on this issue is slight, *see Jauch*, 470 F.3d at 212, and International Marine does not argue that Brunet's unpaid medical bills were not incurred as a result of his injuries aboard the M/V INTERNATIONAL SCOUT. As a result, the Court also GRANTS Brunet's motion with regard to the $9,680.00 of medical bills for which Brunet did not submit a copy of a check showing payment.

Genuine issues of material fact do exist with regard to International Marine's payment of certain medical expenses. For example, International Marine claims to have paid Brunet's medical expenses in relation to $4,670 of services received at Terrebonne General Medical Center and $2,279 of services received from Advanced Neurodiagnostic Center. (R. Doc. 32). International Marine also claims that Brunet incurred $283.33 in medical expenses from Ellisville Drugs, which it paid, rather than $740, as Brunet claimed. Similarly, International Marine

claims to have paid $3,818.24 for twenty medical bills for treatment at Rehab for Work and $1,795 for treatment at RS Medical. (R. Doc. 32). For these expenses, International Marine does not dispute that its payments constitute cure payments. Whether the payments fully satisfy International Marine's cure obligation, on the other hand, is an issue of fact that, at least in part, precludes summary judgment. *See Cooper v. Diamond M Co.*, 799 F.2d 176, 179 n. 4 (5th Cir. 1986)(amount of maintenance and cure is an issue of fact); *Murphy v. Light*, 257 F.2d 323, 327 (5th Cir. 1958)(reversing district court grant of summary judgment).

Lastly, the Court DENIES Brunet's motion with regard to two expenses for which he claims, but did not submit medical bills. With regard to the first expense, Brunet submitted a copy of a $300 check without an accompanying invoice. (R. Doc. 32). With regard to the second expense, Brunet submitted a copy of a $688 invoice from a debt collector. *Id.* The invoice, however, does not describe the underlying debt. *Id.* Because Brunet does not point to an attached *medical* bill or invoice in either instance, it is not clear from the record whether he incurred the two expense in relation to the injury he suffered aboard the M/V INTERNATIONAL SCOUT. *See Rogers v. Eagle Offshore Drilling Services, Inc.*, 764 F.2d 300 (5th Cir. 1985)(denying future cure payments because seaman could not establish that payments were

necessary to treat his injury). As a result, material issues of fact remain and Brunet's motion is DENIED in part.

IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Brunet's motion for partial summary judgment. (R. Doc. 30).

It is so Ordered.

New Orleans, Louisiana, this 23rd day of February, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE